UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:12-CV-398-JD |
| | ) | (Criminal No. 3:10cr132-JD) |
| FRANK E. STORK, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

### I. PROCEDURE

Frank Stork (hereinafter "Stork") was indicted by a federal grand jury on October 14, 2010. The two count indictment alleged that Stork was a convicted felon in possession of a firearm (count one) and ammunition (count two), each in violation of 18 U.S.C. § 922(g)(1).

Attorney Mark Lenyo (hereinafter "Lenyo") was appointed to represent Stork and on October 29, 2010, he entered his appearance. On November 1, 2010, Stork with counsel was arraigned, entered a plea of not guilty, and a jury trial date was scheduled. After granting a motion to continue the trial, the district judge re-scheduled the trial.

On January 10, 2011, Stork filed a *pro se* letter complaining about Lenyo's representation. However, that letter was struck by the court. (R. 22) The matters raised in the letter however were addressed by the district judge during the pretrial hearing held on January 13, 2011. After hearing from both Stork and Lenyo, the district judge denied Stork's request for new counsel.

A jury trial commenced on January 24 and concluded on January 26, 2011. Stork was convicted on both counts of the indictment. The United States filed a sentencing memorandum in

which it asked the court to vacate the conviction on count two because of double jeopardy concerns and to sentence the defendant only on count one. On June 30, 2011, at sentencing, the court agreed with the government and sentenced Stork only on the felon in possession of the firearm count (count one). The court then imposed a sentence of eighty-two (82) months on count one to be followed by three (3) years of supervised release, and imposed the mandatory special assessment of $100.

After Stork filed a *pro se* notice of appeal, which was later dismissed, Lenyo filed a notice of appeal as counsel of record on July 12, 2011. Lenyo later moved to withdraw as counsel which was granted by the court of appeals on August 31, 2011. Attorney Barry Levenstam was appointed to represent Stork on appeal. Stork later advised the court of appeals that he wished to proceed *pro se* on appeal. As a result, on December 20, 2011, Attorney Levenstam moved to withdraw as counsel which was granted on January 4, 2012.

Stork later filed his *pro se* brief on January 27, 2012. On June 13, 2012, the court of appeals affirmed the conviction and sentence of Stork while declining to consider his claims of ineffective assistance of counsel on direct appeal. *United States v. Stork,* 2012 WL 2130905 (7th Cir. June 13, 2012). The court did consider several issues involving the testimony of Officer Alan Wiegand, discovery issues and the closing argument of the government, none of which were found to be grounds to reverse the conviction. Stork did not challenge his conviction on double jeopardy grounds either in the district court or on appeal to the Seventh Circuit.

On August 15, 2012, a petition seeking a rehearing en banc was denied. On July 23, 2012, Stork filed a motion in this court to vacate his conviction and sentence. This court granted Stork additional time to file an amended petition and instructed him to include all the grounds for

relief. On October 22, 2012, Stork filed an amended petition. The United States then filed a motion to dismiss the petition or to suspend briefing in the district court when it learned that Stork had filed a petition seeking a writ of certiorari in the United States Supreme Court. Stork then moved to dismiss his petition filed in the Supreme Court which was granted and this court ordered the United States to file a response to his § 2255 petition by January 25, 2013.  On February 11, 2013, Stork filed his Response (sic) to the Response of the United States.

On October 17, 2012, the district judge referred Stork's Motion to Vacate under 28 U.S.C. § 2255 to the undersigned for the preparation of a Report and Recommendation.  For the reasons that follow, the undersigned **RECOMMENDS** that Stork's Motion to Vacate under 28 U.S.C. § 2255 be **DENIED**.

## II.    FACTS

On the night of August 26, 2010, South Bend Police Officer Nicholas McKinley was working a seat belt task force shift when he observed that Howard Kindred was driving a 1997 gray Plymouth Voyager van without a seat belt on. Officer McKinley turned his squad car around and stopped the van near Western Avenue and Walnut Street. (T.T. I pps. 24-26; 53-54) Officer McKinley had a mobile video recording system and wireless microphone that recorded the traffic stop and subsequent events. (T.T. I pps. 27, 30, 38)(Exhibit 1a, DVD of traffic stop).

As Officer McKinley approached the driver's side of the van, he heard a banging noise that he believed was caused by someone moving something inside the passenger compartment. (T.T. I p. 28) The officer noticed that Stork, the sole passenger, had his hands near an area of the console where a cup holder had been converted into an ashtray. (T.T. I pps. 28-30) Officer McKinley asked the men if there were any guns, knives or weapons in the van, which Stork

denied. (T.T. I pps. 31- 32 and Exhibit 1c) Officer McKinley however, noticed Stork had put his hand over the edge of the window, and he then heard a clinking noise that "sounded like metal hitting the pavement." (T.T. I p.33, 46; Exhibit 1a at 22:27:13; T.T. III pps. 29-30) Stork denied to the officer he had dropped anything. (T.T. I p.34)

Officer McKinley walked around the front of the vehicle and saw a gun magazine sitting outside the passenger's side door. (T.T. I p. 36; T.T. II pps. 22-23, 86; Exhibits 4, 4a and 4b) The presence of the magazine convinced Officer McKinley that there was likely a gun in the vehicle within reach of both Kindred and Stork and made him fear for his safety. (T.T. I p. 37, 76) Officer McKinley testified that his top priority that night was going home alive (T.T. I p.76) and in doing so used some strong language in trying to keep control of the situation. (T.T. I pps. 35, 93)

Officer Ryan Hiipakka arrived to assist Officer McKinley, and the pair proceeded to remove first Kindred and then Stork from the van. (T.T. I p. 38; T.T. II pps.10-13; Exhibit 1b video from Officer Ryan Hiipakka's vehicle admitted as an exhibit)(T.T. II pps.11, 26) Officer McKinley testified that when Stork was removed from the vehicle, three .22 caliber bullets fell off his lap, with two landing next to the magazine laying on the ground and another falling on the

passenger's side floorboard. (T.T. I p. 40; T.T. II pps.17, 24-25, 40, 42-43; Exhibits 5 and 5a) Officer Hiipakka testified he did not see any bullets fall off the defendant's lap, but that his attention was focused on Stork's hands at the time. (T.T. II pps.14-15, 42)

Officer McKinley searched the van and found behind the converted ashtray in the console a small, silver semi-automatic handgun with a round in the chamber but no magazine. (T.T. I p. 39; T.T. II pps.16-18; Exhibits 2, 2a and 3, 3a) All the ammunition located both in the handgun chamber, in the car, and on the pavement had the same markings. (T.T. II pps.18, 84)

Stork was advised of his Miranda rights and talked to officers that evening. (T.T. I pps. 58-59) He denied dropping the magazine out of the window. (T.T. I pps. 58-59) Stork was then transported to the St. Joseph County Jail by Officer McKinley. (T.T. I pps. 47, 56) At the jail, Stork admitted to Corporal Alan Wiegand, who assisted Officer McKinley with the booking process, that he and Kindred were "shooting [the gun] off earlier in the day in the backyard." (T.T. II pps. 47, 52-53) Lenyo objected to this line of questioning as unreliable and 404(b) evidence, and the court, after a sidebar, overruled the objection. (T.T. II pps. 48-53) Lenyo vigorously cross-examined the officer and challenged his recollection of the conversation and timing of his supplemental report recounting the incident. (T.T. II pps. 53-56)

At the time of the traffic stop, Stork was living with his uncle, John Jamison, who owned the van. (T.T. II pps. 127-128) That night Jamison loaned the van to his nephew and Kindred. Jamison denied ownership of the gun Officer McKinley had recovered from the van. (T.T. II pps.128-130) While in jail, Stork called Jamison and asked him to take the charge for the gun. (T.T. II pps. 141-143)

On August 30, 2010, four days after his arrest, Stork gave a videotaped statement to South Bend Police Officer and Bureau of Alcohol, Tobacco, Firearms and Explosives Task Force Officer Bayne Bennett. (T.T. II pps. 163, 165-168; Exhibit 12) After being advised of his rights, Stork made a number of statements, including that: a) the gun in the van may have been Jamison's, b) Kindred had been making statements about not getting shot again, and c) Stork during the drive had been counting his money and had been asleep. Beginning around nine minutes into the interview, Task Force Officer Bennett repeatedly pressed Stork about the magazine and bullets. He told Stork that, according to the police report, bullets had fallen off Stork's lap. Stork did not audibly reply or in any way deny this claim. Later, as Task Force

Officer Bennett continued to ask whether Stork had dropped anything out the door, Stork implied

that "he would have threw something out the door and it didn't go all the way out and something

fell in my lap." Task Force Officer Bennett continued to ask Stork to explain the .22 caliber

rounds found in his lap and asked if someone threw them on him, and Stork again failed to

respond. Later, when again asked how the bullets ended up on his lap, he said that "he" threw

them there, but refused to say who "He" was. See generally Exhibit 12 (9:02-12:15). When

asked about how the bullets ended up on his lap, Stork said someone threw them on his lap.

When asked who threw the magazine out the window, he responded "He had to." When Agent

Bennett asked who "He" was, however, Stork refused to answer and denied that he had dropped

anything out the window. (Exhibit 12) The defense rested without calling any witnesses.

During closing argument Lenyo made a spirited argument attacking the government's

case on a number of fronts. (T.T. III pps. 37-56) This included attacking the credibility of Officer

Wiegand and placing the responsibility for the firearm on Howard Kindred. (T.T. III pps.49-54)

The jury then deliberated and later returned guilty verdicts on both counts of the

indictment. (T.T. III pps.76-78)

**III. ANALYSIS**

**A. Standard of Review**

Relief under § 2255 is reserved for extraordinary situations. *Prewitt v. United States*, 83

F.3d 812, 816 (7th Cir.1996) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 633–34 (1993)). The

relief is available only in limited circumstances, such as where an error is jurisdictional or of

Constitutional magnitude. *See Oliver v. United States*, 961 F.2d 1339, 1341 (7th Cir. 1992).

Section 2255 petitioners may not raise: (1) issues that were raised on direct appeal, unless there

is a showing of changed circumstances; (2) non-constitutional issues that were not raised on

appeal; and (3) constitutional issues that were not raised on direct appeal. *Theodorou v. United States*, 887 F.2d 1336, 1338 (7th Cir.1989). A §2255 motion is neither a recapitulation of nor a substitute for a direct appeal. *Varela v. United States*, 481 F.3d 932, 935-36 (7th Cir. 2007).

A § 2255 petitioner is not entitled to an evidentiary hearing on his claims when "the files and records of the case conclusively show that the prisoner is entitled to no relief," 28 U.S.C. § 2255(b); *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007);*Cooper v. United States*, 378 F.3d 638, 641-42 (7th Cir.2004). For an evidentiary hearing to be granted, a petitioner must allege--with sufficient detail--facts that, if proven, would entitle him to relief. These facts must be set forth in a "detailed and specific affidavit" showing that the petitioner has "actual proof of the allegations going beyond mere unsupported assertions." *Prewitt,* 83 F.3d at 819. If an affidavit's allegations are "unreasonably vague, conclusory, or incredible," then no evidentiary hearing is required. *See Oliver,* 961 F.2d at 1343 n.5. Likewise, allegations "essentially predicated on conjecture and speculation," *Barry v. United States*, 528 F.2d 1094, 1101 (7th Cir. 1976), are patently insufficient to "justify the commitment of judicial resources necessary to accomplish the delicate and demanding task" of an evidentiary hearing. *See Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006). In light of the foregoing, no evidentiary hearing is required.

Additionally, the procedural default doctrine reflects the general rule that claims not raised on direct appeal may not be raised on collateral review. *Massaro v. United States,* 538 U.S. 500, 504 (2003); *see also Bousley v. United States*, 523 U.S. 614, 621 (1998). Typically, a defendant may only overcome procedural default if he can show either: (1) cause and actual prejudice; or (2) actual innocence. *See United States v. Frady*, 456 U.S. 152, 167 (1982). Ineffective assistance of counsel claims may satisfy the "cause" prong and are best raised in a §

2255 petition. *See Massaro*, 538 U.S. at 504 (requiring a defendant to bring ineffective assistance claims and on direct appeal does not promote the finality of judgements and conservation of judicial resources since factual record may not be fully developed).

To succeed on his ineffective assistance of trial counsel claim, Stork must show more than he and Lenyo had a difference of opinion on trial strategy. Stork must show that his attorney's performance was deficient—"that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"—and that counsel's deficient performance prejudiced his defense—"that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); see also *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."); *see also United States v. Lathrop*, 634 F.3d 931, 937 (7th Cir. 2011); *Taylor v. Bradley*, 448 F.3d 942, 948 (7th Cir. 2006) (defendant "must establish that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'") (quoting *Strickland*, 466 U.S. at 694).

A court's "review of the attorney's performance is 'highly deferential' and reflects 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) (quoting *Davis v. Lambert*, 388 F.3d 1052, 1059 (7th Cir. 2004)). "The important inquiry is 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *United*

*States v. Recendiz,* 557 F.3d 511, 531 (7th Cir. 2009) (quoting *Strickland*, 466 U.S. at 686); *see also Cooper*, 378 F.3d at 641 ("Defense counsel is strongly presumed to have rendered adequate assistance and to have made significant decisions in the exercise of his or her reasonable professional judgment.").

### B.  Stork's Claims

With this high standard in mind, the court now turns to Stork's specific claims.  Despite telling the district court that Lenyo was doing a "great job" for him, (T.T. II p. 65), Stork's ineffectiveness argument now contains a laundry list of complaints about Lenyo's performance. Stork claims that Attorney Lenyo was constitutionally ineffective for failing to challenge the indictment on double jeopardy grounds, failing to seek suppression of certain evidence, not objecting to the government's closing argument, and not seeking dismissal of the indictment on the grounds that the trial court lacked subject matter jurisdiction. These arguments fall short of establishing grounds to vacate the sentence of petitioner Stork. The Constitution "calls for a professionally competent defense, not for the best possible defense," *Holman v. Gilmore*, 126 F.3d 876, 883 (7th Cir. 1997). The dual showing of deficient performance plus prejudice is difficult to make "because counsel is presumed effective, a party bears a heavy burden in making a winning claim based on ineffective assistance of counsel." *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000). Here, Lenyo's performance passes constitutional muster when examined in light of these principles.

As the record reveals, Stork made complaints about his trial attorney before, during and after his trial.  Yet at each point, the district judge addressed his complaints to ensure that there was not an irreparable break down in the attorney client relationship and that Stork was receiving adequate representation.

On January 13, 2011, at the final pretrial conference, the district court first took up a *pro se* letter from Stork, which the court construed as a request for new counsel. (P.T.T. pps. 3, 6, 8-11) The district court heard from all parties including the defendant. Lenyo informed the court that he had met with Stork on eight or nine occasions and did not think there was a breakdown in the attorney-client relationship. (P.T.T. p. 6) Lenyo did set forth on the record the detailed nature of their relationship and their differences on some legal and factual issues. (P.T.T. pps. 3-8) Stork

agreed that he was communicating with Lenyo, but stated that they did not necessarily agree on trial strategy. (P.T.T. p.11) Lenyo felt in this case he had discharged his duties to Stork. (P.T.T. p. 7) The district court agreed and denied the request for new counsel. (P.T.T. p. 9) It noted that Lenyo in other cases had been very effective (P.T.T. p. 8) and concluded that Stork and Lenyo were merely experiencing "personality conflicts and disagreements over trial strategy," rather than a total breakdown in the attorney-client relationship. (P.T.T. p. 8, 13) The case then proceeded to trial on January 24, 2011. Counsel did not seek to challenge the indictment prior to trial.

During the trial the issue of differences in trial strategy between Stork and his attorney once again surfaced even though the defendant acknowledged Lenyo was doing a "great job." (T.T. II p. 65) The district court gave Stork ample opportunity to make his concerns known. (T.T. II pps. 62-65) Lenyo then made a record indicating he had in fact interviewed the driver, Kindred, as a potential witness but after interviewing him decided not to call him. Counsel also advised that the disagreements were really matters of trial strategy and that he did continue to listen to Stork and had pursued a question Stork wanted asked of a witness that was fruitful. (T.T. II pps. 66-67) The district judge commented that Lenyo appeared to be doing a very thorough job. (T.T. II p. 66) After closing arguments Stork made a similar type of complaint to

the district court that had to do with counsel's argument. (T.T. III pps. 68-69)

### 1. Stork's claimed violation of his double jeopardy rights.

Stork complains that his attorney's failure to challenge the indictment triggered a violation of his double jeopardy rights. Stork also complains that the indictment prejudiced his case because the jury may have thought he was involved in more criminal activity than he was. Stork continues to press his lack of guilt on any charge as well in this argument. These arguments were not raised initially in the district court nor on appeal. Stork has procedurally defaulted on these claims since they were not raised earlier. In an attempt to save them from default, he adds a "tag line" saying his counsel was ineffective for not raising it in the district court but does little to develop the argument along those lines. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 739 (7th Cir. 2008) (undeveloped and legally unsupported arguments are waived even when those arguments raise constitutional issues). However, even if the issue has not been procedurally defaulted, Stork's argument fails.

The indictment here charged the defendant with two counts of violating 18 U.S.C. § 922(g)(1), one for possession of the firearm and a second for possession of the ammunition. Simultaneous possession of a firearm and ammunition (or multiple units of either or both) constitutes a single violation of § 922(g) unless the government can trace the possession to separate courses of conduct. *United States v. Ellis*, 622 F.3d 784, 794 (7th Cir. 2010); *United States v. Moses,* 513 F.3d 727, 732 (7th Cir. 2008). Multiplicity is the charging of a single offense in separate counts of an indictment. *United States v. Allender*, 62 F.3d 909, 912 (7th Cir. 1995) (citing *United States* v. *Gonzalez*, 933 F.2d 417, 424 (7th Cir.1991)). Multiplicity in an indictment exposes a defendant to the threat of receiving multiple punishments for the same offense in violation of the Double Jeopardy Clause of the Fifth Amendment. *United States v.*

*Handford*, 39 F.3d 731, 735 (7th Cir. 1994)); *United States v. Briscoe*, 896 F.2d 1476, 1522 (7th Cir. 1990) (quoting *United States v. Podell*, 869 F.2d 328, 330 (7th Cir. 1989)).

However, prosecutors have broad discretion in bringing criminal cases. *United States v. Thornburg*, 921 F.2d 654, 657 (6th Cir. 1990) (citing *Ball v. United States*, 470 U.S. 856, 859 (1985)). See *United States v. Platter*, 514 F.3d 782, 786-87 (8th Cir. 2008) (the government has considerable discretion in fashioning the counts of an indictment and has a right to present alternative theories to the jury, and if convicted on both, merger of the counts is the remedy); *United States v. Carnes,* 41 F. Supp. 2d 719 (E.D. Mich. 1999)(same).

Thus a grand jury may charge a separate count, however, for each firearm and ammunition, *United States v. Buchmeier*, 255 F.3d 415, 422 (7th Cir. 2001), so long as the number of convictions conforms to the evidence at trial. *United States v. Jones,* 601 F.3d 1247, 1259–60 (11th Cir. 2010); *United States v. Conley*, 291 F.3d 464, 470-71 (7th Cir. 2002).

In this case, defense counsel used his closing remarks to focus on a theory that Stork never possessed any firearm or ammunition as a passenger in the vehicle driven by a third party and on the credibility of the officers. (T.T. III pps. 37-56) A tactical decision to attack the government's case from the perspective of whether there was "possession" by Stork of either the firearm or ammunition or both can hardly be classified as deficient performance, especially when a challenge to the indictment process had little chance of success. Stork has not demonstrated he has suffered any prejudice as a result of counsel's decision not to challenge the grand jury indictment.

However, and most importantly, after the jury returned guilty verdicts on both counts, the United States asked the court prior to sentencing to merge the two counts into a single conviction, eliminating any concerns of double jeopardy for multiple punishments. *See United States v. Parker,* 508 F.3d 434, 440–41 (7th Cir. 2007); *United States v. Tann,* 577

F.3d 533, 537-42 (3rd Cir. 2009) (possession of a firearm and ammunition seized at the same time in the same place supports one conviction; so merger is the remedy). Lenyo did not object to the request by the United States to vacate the second conviction. (S.T. p.20) Because the court granted the request and vacated the second conviction, there simply is no prejudice to Stork.

Nor can Stork show he suffered any prejudice when both counts were submitted to the jury. The evidence would have been identical whether the jury was asked to consider one or two counts since both arose from the same traffic stop. When the case was submitted to the jury the district court properly advised that each count should be considered separately and that their verdict on one count should not control their verdict on the other count. (T.T. III 64); *see also United States v. Robinson,* 606 F.3d 943, 953 (8th Cir. 2010) (court rejected defendant's argument that multiplicitous indictment prejudicial where jury instructed to consider each count separately); *United States v. Starks,* 472 F.3d 466, 471 (7th Cir. 2006)(duplicity concerns in the indictment cured by proper jury instructions).

The Double Jeopardy Clause of the Fifth Amendment provides three forms of protection to defendants: first, the clause prevents a subsequent prosecution for the same offense after an acquittal; second, it prevents subsequent prosecutions for the same offense after a conviction; and third, it prevents multiple punishments for the same offense. *United States v. Wilson*, 420 U.S. 332, 342–43 (1975) (citing *North Carolina v. Pearce*, 395 U.S. 711 (1969)). Here it is clear that Stork's Fifth Amendment rights were not violated.

### 2. Stork's claims dealing with seeking suppression of evidence are without merit.

Stork argues that Lenyo was ineffective for failing to seek a suppression hearing dealing with Stork's statement to Officer Wiegand and his statement to Task Force Officer Bayne Bennett. A defendant claiming ineffective assistance based on counsel's failure to present a

motion to suppress must establish that he would have prevailed on the motion and there is a

reasonable probability that the verdict would have been different, absent the excludable

evidence.

*Kimmelman*, 477 U.S. at 375); *see also United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir.

2005). Stork's argument fails here because he has not demonstrated that his suppression claims

were meritorious or that the result of the trial would have been different if the evidence had been

suppressed. *Fuller v. United States,* 398 F.3d 644, 652 (7th Cir. 2005) (no duty to make a

frivolous argument); *Carpenter v. United States*, 492 F. Supp. 2d 912, 922 (N.D. Ill. 2007)

("Counsel was not constitutionally ineffective for failing to raise what would have been yet

another frivolous argument.").

Stork argues that his statement to Officer Wiegand was made in violation of *Miranda v.*

*Arizona*, 384 U.S. 436, 478-79 (1966). Lenyo objected to the admission of Officer Wiegand's

statement, but not on this ground. (T.T. II pps. 48-50) As the court of appeals ruled, evidence

suggesting that Stork recently possessed the same firearm was directly relevant to the question of

whether he possessed the firearm during the traffic stop. *United States v. Miller,* 673 F.3d 688,

694-95 (7th Cir. 2012); *United States v. Canady,* 578 F.3d 665, 671 (7th Cir. 2009). The

statement was properly admitted.

The issue is waived unless Lenyo's failure to move for the statements' suppression was

constitutionally ineffective. *See Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) ("An

ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and

raise issues not presented at trial . . . ."). Stork cannot establish this, however, because nothing in

the record suggests that such a motion on different grounds would have succeeded. Stork does

not dispute he was advised of his *Miranda* rights at the scene of his arrest and he spoke to Officer

McKinley. (T.T. II p. 48) While there is no evidence that Officer Wiegand repeated the *Miranda* warnings before speaking to Stork, the law did not require him to do so. *See United States v. Edwards*, 581 F.3d 604, 606–07 (7th Cir.2009) (government agent conducting second round of questioning of defendant did not violate defendant's *Miranda* rights by failing to recite the *Miranda* warnings to defendant before the second round of questioning began). The fact that Stork had been told of his rights creates a presumption that he was still aware of them "even if some time had elapsed between his receiving the warnings and undergoing the questioning that elicited the inculpatory statement." *Id.* at 607. Stork points to nothing that would suggest he could rebut that presumption or at what point he says he invoked his rights. Indeed, as the government shows four days later Stork once again waived his *Miranda* rights when questioned by Task Force Officer Bennett. (T.T. II pps. 165-167, Exhibit12) As Stork cannot show that his initial waiver was involuntary, a motion to suppress under these facts would not have succeeded.

At its core, Lenyo's decision not to seek suppression, but instead to vigorously cross-examine Officer Wiegand about the content of the statement, and about his failure to record it in a police report until months later was a tactical trial decision that simply does not amount to ineffective assistance of counsel. *United States v. Davenport,* 986 F.2d 1047, 1049 (7th Cir. 1993) (defense counsel "need not pursue every conceivable avenue; they are entitled to be selective").  Lenyo also attacked the credibility of the officer and the statement again in his closing. (T.T. III pps. 49-50) So this issue was not overlooked or underdeveloped.

Stork also tries to mount an attack on counsel's performance for not objecting to the admission of Exhibit 12 which was the statement he gave to Bayne Bennett claiming it lacked

clarity. However, the Seventh Circuit has held that partially inaudible tape recordings "'are admissible unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy.'" *United States* v. *Zambrana*, 864 F.2d 494, 498 (7th Cir. 1988) (quoting *United States v. Wilson*, 578 F.2d 67, 69 (5th Cir. 1978)). Generally, the partial inaudibility of an audio recording is relevant to its weight, rather than its admissibility. *United States v. Robinson*, 956 F.2d 1388, 1395 (7th Cir.1992). Stork has not shown a reasonable probability that the audiotapes would have been excluded had his attorney objected to their admission on grounds of inaudibility, thus altering the outcome of his trial. Neither can Stork point to anything in the record that shows the recording itself was unreliable. *See McMillan v. United States,* 2010 WL 3526500 (N.D. Ill. Sept. 1, 2010) (counsel not ineffective for failing to object to recording as inaudible). Because Stork has failed to show that the result of his trial would have been different even if these statements were suppressed, his claim must fail.

### 3. Stork has not established any discovery or due process violations.

Stork next contends that his attorney did not timely disclose Officer Wiegand's amended police report to him and as a result did not properly investigate the statements contained in the report.

Initially, during a trial recess, Stork complained that Officer Wiegand's police report was not turned over to him or to Lenyo in discovery. (T.T. II p. 63) The United States advised the court that Officer Wiegand's supplemental report concerning Stork's statement had been provided to Lenyo on December 20, 2010, two days after the United States received it and over a month in advance of the trial date. (T.T. II pps. 48-60 and T.T. II p. 68) Stork now claims that

had Lenyo shared the report with him earlier, he could have instructed Lenyo to investigate further for possible witnesses or to subpoena a tape from the jail. This is merely retrospective conjecture.

Courts have held there is no constitutional right that all discovery in a criminal case, be it a report or otherwise, be shared with a criminal defendant. *See Carillo v. U.S.*, 995 F. Supp. 587, 591 (D.V.I. 1998) (no constitutional duty to share discovery with client). Additionally, courts addressing this issue have held that an attorney's failure to share discovery materials with his client does not amount to ineffective assistance of counsel. *See Gaughan v. United States*, 2006 WL 2798155, (N.D. Ind. Sept. 28, 2006); *Ramsden v. Warden, Dep't of Corr.*, No. 02–138, 2003 WL 356031, (D. Me. Feb. 14, 2003).

However, Stork fails to present with any precision what further investigation would have shown. *See United States ex rel. Cross v. DeRobertis,* 811 F.2d 1008,1016 (7th Cir. 1987) Where a petitioner claims his trial counsel failed to call a witness or witnesses, he must make a specific, affirmative showing as to what the missing evidence would have been and prove that this witness's testimony would have produced a different result." *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994) (internal citation omitted). Stork carries the burden of providing the court with specific information as to what further investigation would have produced. *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003). Stork has not done so. Rather, Stork makes a passing reference to possibly having a girlfriend testify without any real specifics including providing a affidavit from the girlfriend. This is simply insufficient.

Furthermore, Attorney Lenyo objected to the statement and when overruled launched a spirited attack on the credibility of the officer both in his cross-examination and during his closing remarks to the jury. Lenyo challenged whether the statements in the supplemental report were accurately reported by the officer after such a long period of time. During the cross-examination of Wiegand, Lenyo challenged the officer's ability to recall details of an event months earlier without notes and having daily contact with numerous individuals. He also attempted to show that his memory on other facts was not as good as what he testified to in his supplemental report. (T.T. II pps.53-56) During closing argument, Lenyo again attacked the credibility of this witness (T.T. III pps. 49-50) calling his testimony "Baloney." (T.T. III p.50)

While the credibility of the witness was for the jury to decide, Lenyo's cross-examination and closing remarks can hardly be called "deficient." *United States v. Adamo,* 882 F.2d 1218, 1227 (7th Cir. 1989) (once counsel conducts a reasonable investigation into all lines of possible defense, his decision to pursue one line to the exclusion is rarely second-guessed). Lenyo did pursue the possibility of calling the driver, Howard Kindred, for the defense but abandoned that idea after meeting with him. Lenyo did not believe Kindred would be a favorable witness for the defense and would actually hurt their case. (T.T. II p.67)

**4. The government did not engage in prosecutorial misconduct by making improper remarks during closing argument; therefore, any failure to object by Lenyo does not constitute ineffective assistance of counsel.**

Stork claims that the government committed prosecutorial misconduct in its closing argument. Specifically, he argues that the government falsely implied several times in closing argument that Stork had told law enforcement officials either that Kindred "threw the bullets on him" or that they "just fell in" Stork's lap "by an accident." (T.T. III pps. 35, 61-62) Stork argues

that the government had somehow misled the jury in their closing remarks and that Lenyo was ineffective for not objecting during argument to the jury. He also claims that Lenyo should have sought to suppress the recording for lack of "clarity."

Stork's argument concerning the closing appears to be repackaging of his argument made in and rejected by the court of appeals. There the court found that the "prosecutor's remarks were a fair characterization of the evidence heard at trial and thus were not improper," noting that prosecutors are allowed to argue reasonable inferences from the evidence heard by the jury. *See United States v. Klebig,* 600 F.3d 700, 718 (7th Cir. 2009); *United States v. Ward*, 211 F.3d 356, 365 (7th Cir. 2000). In *DeSilva v. United States,* 2011 WL 3320523 (C.D. Ill. Aug. 2, 2011), the district court denied a petition brought pursuant to § 2255 and rejected a similar type of claim. *See also United States v. Kellum,* 42 F.3d 1087, 1095-96 (7th Cir. 1994) (failure to object to prosecutor's comments that were fair comment on evidence not deficient performance).

Although prosecutors may not "infuse their closing arguments with facts that the court has not admitted into evidence, they may argue reasonable inferences from the evidence that the jury has seen and heard." *United States v. Waldemer*, 50 F.3d 1379, 1383 (7th Cir. 1995); *see also United States v. Doyle*, 771 F.2d 250, 258 (7th Cir. 1985) (closing arguments are limited to the facts in evidence); *United States v. Vargas*, 583 F.2d 380, 385 (7th Cir. 1978) (counsel may make arguments reasonably inferred from the evidence presented).

Stork complains that the prosecutor distorted the evidence the jury heard concerning whether he admitted having bullets on his lap and how they got there. The court of appeals decided this very issue adversely to petitioner and this court will not now reach a different

conclusion.  The prosecutor's closing argument was a fair characterization of the evidence and was not improper.

> **5. The district court had subject matter jurisdiction over the offense and Lenyo was not ineffective for failing to raise a challenge under the applicable legal principles.**

Stork claims that the district court was without subject matter jurisdiction because the firearm described in the indictment had lost its interstate character by the time of his "alleged"possession. This claim was never raised on direct appeal. Stork attempts to avoid procedural default by now claiming that Lenyo was ineffective for not challenging the statute or the district court's jurisdiction. Stork's claim has no merit; thus, Lenyo's decision not to challenge the interstate character of the firearm or subject matter jurisdiction can hardly be called deficient. *United States v.Rezin*, 322 F.3d 443, 446 (7th Cir. 2003) (attorneys have "no duty to make a frivolous argument"); *Woods v. United States,* 2009 WL 3787904 (N.D. Ill. Nov.12, 2009)(same).

A similar type of argument was raised and rejected by the district court in *Ellis v. United States,* 2012 WL 4959491 (N.D. Ind. Oct.16, 2012) (counsel not deficient for pursuing frivolous argument dealing with constitutionality of 18 U.S.C. § 922(g)(1) and subject matter jurisdiction of the district court). Here, the government presented testimony in Stork's trial from the witness Laurie Jolley that established the necessary interstate nexus sufficient to establish federal jurisdiction. (T.T.II pps.117-124) The firearm and ammunition had been manufactured outside the state of Indiana and thus would have necessarily traveled in interstate commerce prior to August 26th, 2010. This is sufficient to establish jurisdiction.

**III.    CONCLUSION**

Because Stork has failed to demonstrate that his counsel's representation was constitutional deficient, Stork was not denied the effective assistance of counsel. As a result, the undersigned **RECOMMENDS** that his motion under 28 U.S.C. § 2255 should be, in all respects, **DENIED**.

**NOTICE IS HEREBY GIVEN that within fourteen (14) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed.R.Civ.P. 72(b)(2). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**

**SO ORDERED.**

Dated April 17, 2013

s/Christopher A Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge