UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. 3:10-CR-132 JD |
| | ) | Civil Case No. 3:12-CV-398 JD |
| FRANK E. STORK | ) | |

## OPINION AND ORDER

Now before the Court are Frank E. Stork's petition to vacate his conviction under 28

U.S.C. § 2255 [DE 114] and his objections [DE 130] to the magistrate judge's report and

recommendation [DE 129] denying the petition. The petition is fully briefed [DE 114, 127, 128],

as are Mr. Stork's objections to the magistrate judge's report and recommendation [DE 130, 133,

134]. For the reasons that follow, having reviewed each of Mr. Stork's claims without deference

to the conclusions in the report and recommendation, the magistrate judge's report and

recommendation is ADOPTED insofar as it recommends that the Court deny the petition, and

Mr. Stork's petition to vacate his conviction is DENIED.

## I. BACKGROUND

The factual and procedural background of this case was set out extensively in the report

and recommendation, so the Court provides only a summary of the pertinent facts here. Mr.

Stork was indicted by a federal grand jury on October 14, 2010. The two-count indictment

charged that on August 26, 2010, Mr. Stork knowingly possessed a firearm (Count I) and

ammunition (Count II) in and affecting interstate commerce, having previously been convicted

of one or more crimes punishable by imprisonment for a term exceeding one year. [DE 1].

Attorney Mark Lenyo was appointed to represent Mr. Stork pursuant to the Criminal Justice Act.

Mr. Stork pled not guilty and went to trial, where a jury found him guilty of both counts. At

sentencing, the Court merged the two counts and vacated the conviction on Count II, and

sentenced Mr. Stork to 82 months of imprisonment on Count I. Mr. Stork appealed his conviction, proceeding *pro se*, but his conviction and sentence were affirmed. Following his direct appeal, Mr. Stork filed the present motion to vacate his conviction under 28 U.S.C. § 2255.

The facts of the case, as presented at trial, are as follows. On August 26, 2010, Mr. Stork was traveling as a passenger in a 1997 Plymouth Voyager van in South Bend, Indiana. South Bend Police Officer Nicholas McKinley pulled the vehicle over when he observed the driver not wearing a seatbelt. As he approached the vehicle, he heard banging noises coming from the center console inside the vehicle, and when he got to the window, he saw the cup holder pulled out of the console and hanging down. Officer McKinley observed Mr. Stork's hands moving around in the area of the cup holder. The cup holder had been converted to an ashtray, and the ash spilled out and had created a cloud. Moments later, as Officer McKinley was speaking with Mr. Stork and the driver, Mr. Stork reached his hand over the edge of his open window, and Officer McKinley then heard the sound of a metallic object hitting the ground. He walked around the vehicle and saw a firearm magazine on the road directly outside Mr. Stork's window.

When backup arrived at the scene, officers removed Mr. Stork from the vehicle. As they did, Officer McKinley saw two rounds of ammunition fall off of Mr. Stork's lap, along with a set of keys. Photographs of the scene show the ammunition and magazine on the road next to the vehicle. In addition, officers found a third bullet on the floor of the vehicle between Mr. Stork's seat and the door. Officer McKinley then searched the vehicle, and found a .22 caliber semi-automatic Jennings pistol in the center console where the cup holder had been removed. The firearm did not have a magazine in it, but one round was chambered. The bullets recovered at the scene were each .22 caliber, and matched the bullet found in the chamber of the pistol. The magazine also matched the pistol that was found.

Mr. Stork was arrested and read his *Miranda* warnings. He briefly spoke to Officer McKinley at the scene, and was then transported to the St. Joseph County Jail for booking. Officer Alan Weigand, who had provided backup at the scene, processed Mr. Stork at the jail. According to Officer Weigand, Mr. Stork stated to him that he had been shooting off the gun earlier in the day. Officer Weigand did not include this statement in the report he wrote that night, but on December 18, 2010, after meeting with the prosecutor, Officer Weigand prepared a supplemental report detailing the statement. Mr. Stork was also interviewed by Officer Bayne Bennett several days later, on August 30, 2010. In the recorded interview, Mr. Stork denied having possessed either the firearm or the ammunition, but suggested that someone else could have thrown the magazine out the window or could have thrown the ammunition onto his lap.

## II.  STANDARD OF REVIEW

### A.    Relief under 28 U.S.C. § 2255

Section 2255(a) of Title 28 provides that a federal prisoner may claim "the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, [and] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).  The Seventh Circuit has recognized that § 2255 relief is appropriate only for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States,* 366 F.3d 593, 594 (7th Cir. 2004) (citation omitted).  Further, "a Section 2255 motion is neither a recapitulation of nor a substitute for a direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) (citation omitted).  Relief under § 2255 is extraordinary because it seeks to reopen the criminal process to a person who has already had an opportunity of

full process. *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States,* 467 F.3d 1063, 1068 (7th Cir. 2006)). Consequently, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4, Rules Governing Section 2255 Proceedings for the United States District Courts. A court may also deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

**B.    Review of the Magistrate Judge's Report and Recommendation**

The district court has discretion to accept, reject, or modify, in whole or in part, the findings or recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1). Under Federal Rule of Civil Procedure 72(b)(3), the district court must undertake a *de novo* review "of those portions of the magistrate judge's disposition to which specific written objection is made." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995). Here, given Mr. Stork's comprehensive objections to the magistrate judge's report and recommendation, the Court reviews the entirety of the report and recommendation *de novo*. Further, because Mr. Stork objected to "every finding and legal conclusion by the Magistrate Judge," as noted by the government, and because the standard of review is *de novo*, the Court relies primarily on the parties' original submissions in order to analyze the merits of Mr. Stork's petition, rather than separately addressing each of Mr. Stork's twenty-two objections to the report and recommendation.[1]

---

[1] The Court notes, however, that the *de novo* standard of review moots Mr. Stork's first objection to the report and recommendation, relative to its near-verbatim recitation of the government's brief. Because this Court reviews the findings and conclusions in the report and recommendation *de novo*, meaning without any deference, the Court need not consider whether the magistrate judge's wholesale adoption of the government's positions warrants any higher degree of scrutiny.

# III. DISCUSSION

Mr. Stork seeks to vacate his conviction under 28 U.S.C. § 2255, which permits a court to vacate a judgment where "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). Specifically, Mr. Stork argues that he was denied his right to the assistance of counsel, as guaranteed by the Sixth Amendment. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. To satisfy this right, an attorney must not only be present with a criminal defendant at his trial, but must assist the defendant in a way that ensures the trial is fair. *Strickland v. Washington*, 466 U.S. 668, 685 (1984). A fair trial is one in which the adversarial process functions properly to produce a just result. *Id*. at 686.

To prevail on a claim for ineffective assistance of counsel, Mr. Stork must first demonstrate that counsel's performance was deficient—"that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. To show deficient performance, the defendant must show "that counsel's representation fell below an objective standard of reasonableness." *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) (quoting *Strickland,* 466 U.S. at 688). "This means identifying acts or omissions of counsel that could not be the result of professional judgment. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (citing *Sussman v. Jenkins,* 636 F.3d 329, 349 (7th Cir. 2011)). Further, "there is a strong presumption that [the defendant's] attorney performed effectively," *Berkey v. United States*, 318 F.3d 768, 772 (7th Cir. 2003), and that the challenged conduct "might be considered a sound trial strategy." *Strickland*, 466 U.S. at 689 (citation and quotation omitted).

The reasonableness of counsel's performance must be evaluated "from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). So long as an attorney articulates a strategic reason for a decision that was sound at the time it was made, the decision generally cannot support a claim of ineffective assistance of counsel. *Yu Tian Li v. United States,* 648 F.3d 524, 528 (7th Cir. 2011) (citing *United States v. Lathrop*, 634 F.3d 931, 937-38 (7th Cir. 2011) (provided counsel's reasons for not questioning further were not "so far off the wall that we can refuse the usual deference that we give tactical decisions by counsel, his performance will not qualify as deficient")); *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005).

Even if counsel's performance was deficient, Mr. Stork must also demonstrate that counsel's deficient performance prejudiced his defense—"that counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. To establish prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Eckstein v. Kingston*, 460 F.3d 844, 848 (7th Cir. 2006) (quoting *Strickland*, 466 U.S. at 694); *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005) (same). "In weighing the effect of counsel's errors, the court must consider the totality of the evidence. . . . A verdict or conclusion that is overwhelmingly supported by the record is less likely to have been affected by errors than one that is only weakly supported by the record." *Eckstein*, 460 F.3d at 848 (quoting *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2001)). Failure to satisfy either the performance or the prejudice prong of the *Strickland* test is fatal to a defendant's ineffectiveness claim. *Velarde v. United States*, 972 F.2d 826, 828 (7th Cir. 1992); *see Strickland,* 466 U.S. at 687 (reasoning that

"[u]nless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable").

Here, Mr. Stork's petition raises six separate alleged failures by his trial counsel that he asserts deprived him of his right to the assistance of counsel as guaranteed by the Sixth Amendment: (1) failing to object to the Indictment as multiplicitous prior to trial; (2) failing to provide Mr. Stork with a supplemental police report prior to trial; (3) failing to object to certain of the government's statements during closing arguments; (4) failing to object to the admission of an audio recording for lack of clarity; (5) failing to challenge the interstate commerce element of the charge; and (6) failing to object to the admission of inculpatory statements allegedly obtained in violation of *Miranda*. The Court considers each in turn.

## A.     Multiplicitous Indictment

Mr. Stork's first objection is that his indictment was multiplicitous, meaning that it charged the same offense in multiple counts. The Indictment contained two counts, alleging that on August 26, 2010, having previously been convicted of a felony, Mr. Stork knowingly possessed a firearm (Count I), and ammunition (Count II), both in violation of 18 U.S.C. § 922(g)(1). Mr. Stork is correct that he could not be *convicted* on both counts: as the Seventh Circuit has concluded, "a single incident of possession of a firearm *and* ammunition cannot support multiple convictions under § 922[(g)]." *United States v. Parker*, 508 F.3d 434 (7th Cir. 2007); *see also United States v. Richardson*, 439 F.3d 421, 422 (8th Cir. 2006) (en banc) ("Congress intended the 'allowable unit of prosecution' to be an incident of possession regardless of whether a defendant satisfied more than one § 922(g) classification, possessed more than one firearm, or possessed a firearm and ammunition."). However, Mr. Stork was not convicted of multiple counts; although the jury returned a guilty verdict on both counts, the Court merged the counts at sentencing and sentenced Mr. Stork on only one count. [DE 71].

Mr. Stork raises various other arguments asserting that the government should not have brought, nor should the grand jury have returned, two separate counts in the first place, and that his Fifth Amendment right against double jeopardy was violated by the mere fact of having been indicted on two counts for the same offense. These arguments are contrary to Seventh Circuit precedent, which holds that "[a]lthough the government is free to pursue multiple theories of violation at trial, only one conviction may result under § 922(g) for a single incident of possession." *Parker*, 508 F.3d at 440. There is an important difference between being *charged* with multiple counts for the same offense, which is typically a prosecutorial prerogative, and being *convicted* of multiple counts for the same offense, which would violate the Double Jeopardy Clause. *Ball v. United States*, 470 U.S. 856, 859–60 (1985) ("To say that a convicted felon may be *prosecuted* simultaneously" on multiple counts for the same unit of prosecution "is not to say that he may be *convicted and punished* for two offenses.") (emphasis added); *Parker*, 508 F.3d at 440; *United States v. Conley*, 291 F.3d 464, 470 (7th Cir. 2002) (stating that "the Government may charge *and convict* an individual of multiple violations of § 922(g)(1)" only if they are from separate courses of conduct) (emphasis added). Though Mr. Stork was charged with multiple counts for the same offense, he was only convicted of one, which is entirely consistent with these cases.

Additionally, even assuming Mr. Stork's rights were violated by being charged with multiple counts for the same offense, he has not provided any authority indicating that the proper recourse would be to dismiss *both* counts, rather than just one of them (which has already occurred). To the contrary, the Seventh Circuit has expressly held that "[t]he proper remedy for the multiplicity error is merger; one conviction must be vacated and merged into the other." *United States v. Bloch*, 718 F.3d 638, 644 (7th Cir. 2013); *Parker*, 508 F.3d at 440–42

(remanding with instructions "to vacate the sentence on *one* of the § 922(g) convictions" upon finding that the charges were multiplicitous) (emphasis added); *United States v. Thomas* 426 F. App'x 459, 461 (7th Cir. 2011) (same). Thus, to the extent there was any error in the first place, Mr. Stork has already received all the relief to which he is entitled, unless he could show that he was somehow prejudiced at trial.

Mr. Stork raises two arguments on that account. He first argues that the multiplicitous indictment prejudiced the jury against him "by creating the impression of more criminal activity on his part than in fact may have been present." *United States v. Marquardt*, 786 F.2d 711, 778 (7th Cir. 1986). However, he has simply failed to show that that is the case. Courts routinely affirm convictions on one count while vacating only the additional multiplicitous counts, or merge multiplicitous counts at sentencing. *E.g.*, *Parker*, 508 F.3d at 442 (holding that counsel was not ineffective for failing to object to multiplicity prior to trial since the second count was vacated); *United States v. Abair*, No. 13-2498, 2014 WL 1045668, at *3 (7th Cir. Mar. 19, 2014) (holding that the merging of *eight* multiplicitous counts into one after trial was proper and did not prejudice the defendant). Therefore, even if a pretrial motion to dismiss one of the counts may have warranted consideration, *see United States v. Wilder*, No. 08-cr-35, 2008 WL 2004256, at *2 (E.D. Wis. May 8, 2008) (directing the government to elect which of two multiplicitous counts to pursue prior to trial), there is no indication here that the fact that Mr. Stork was charged with two counts rather than one in any way influenced the jury against him.

Mr. Stork second argues that he was prejudiced because the government would not have been able to introduce evidence at trial relative to the ammunition if it had only been permitted to proceed on the firearm count. This is incorrect. Evidence that Mr. Stork possessed ammunition matching the firearm he was charged with possessing under Count 1 would be directly relevant

to that count, and would be admissible regardless of whether Mr. Stork was charged with a separate count for possession of the ammunition. Thus, the government would have been permitted to present this evidence and argue to the jury that it should "connect the dots" from possession of the ammunition to possession of the firearm whether Mr. Stork was facing one count or two. Therefore, for all of these reasons, the fact that defense counsel did not move to dismiss the multiplicitous count prior to trial cannot form the basis of an ineffective assistance of counsel claim, as Mr. Stork has not shown either an error or any resulting prejudice.

**B.    The Supplemental Police Report**

Mr. Stork's second argument is that his counsel was ineffective for failing to provide him with Officer Weigand's supplemental report, which recounted statements allegedly made by Mr. Stork that he had been firing the gun earlier in the day. Officer Weigand prepared the supplemental report on December 18, 2010, nearly four months after the alleged statements were allegedly made on August 26, 2010, and the government produced the supplemental report to Mr. Stork's counsel on December 20, 2010. Mr. Stork did not personally receive the supplemental report until trial, however. He therefore argues that his counsel was constitutionally ineffective for failing to provide him with the report earlier, since he could have identified witnesses or sought other evidence that might have contradicted his alleged admission.

Mr. Stork relies primarily on Rule 16 of the Federal Rules of Criminal Procedure to argue that either the government or his attorney was required to provide him with a copy of the supplemental report. Mr. Stork is correct that Rule 16 required the government to disclose the supplemental report containing his alleged admission. However, since Mr. Stork was represented by counsel, the government met its obligation under this rule by producing the report to his counsel; in fact, it would have been improper for the prosecuting attorney to communicate directly with Mr. Stork regarding this matter. *See* Ind. Rules of Prof'l Conduct R. 4.2. Rule 16

did not require Mr. Stork's counsel to provide the report to him directly upon receiving it from the government, either. Rule 16 governs the relationship between the government and the defendant, which, when the defendant is represented, means the government and defense counsel. It does not interfere with the attorney–client relationship or impose any obligations relative to what an attorney must share with his client. Therefore, neither the government nor defense counsel violated any obligations under Rule 16 relative to the supplemental report.

Mr. Stork has not identified any other source for his entitlement to the document, and many courts have held that there is no such right. *Martinez v. Chandler*, No. 11-2277, 2012 WL 2413512, at *4 (C.D. Ill. June 26, 2012) ("Petitioner cites no United States Supreme Court case in support of his view that he has a constitutional right to view discovery materials. This court is unaware of any Supreme Court decision stating that defense counsel is obligated to share discovery materials with the defendant."); *Gaughan v. United States*, No. 2:02CV169, 2006 WL 2798155 (N.D. Ind. Sept. 28, 2006) (noting that defense counsel had no duty to provide the defendant with access to discovery materials, so the defendant's claim that his counsel "was ineffective for failing to share discovery materials fails under the first prong of *Strickland*"); *White v. Cason*, No. 04-CV-75071, 2006 WL 763194, at *11 (E.D. Mich. Mar. 24, 2006) (holding that counsel was not ineffective since he had no duty to share the discovery with the defendant and the defendant did not demonstrate that the documents were fundamental to his defense); *Ramsden v. Warden, Dept. of Corrs.*, No. Civ. 02-138-B-S, 2003 WL 356031, at *10 (D. Me. Feb. 14, 2003) (holding that counsel was not ineffective, stating: "I could find no case that stood for the proposition that, in order to deliver constitutionally adequate representation, an attorney must provide his client in every case with hard copies of the discovery documents and investigative reports."); *Carillo v. United States*, 995 F. Supp. 587, 591 (D.V.I. 1998) ("[T]here

is no constitutional duty to share discovery documents with petitioner. Petitioner cites no case law for this proposition, and this court finds none.").

Rather, counsel's obligation was to honor Mr. Stork's right "to participate in the making of certain decisions which are fundamental to his defense," *Johnson v. Duckworth*, 793 F.2d 898, 900 (7th Cir. 1986), and his right to be "informed of important developments in the course of the prosecution," *Strickland*, 466 U.S. at 688. Here, Mr. Stork has not shown that his counsel failed to do so by not providing the supplemental report to him prior to trial. The supplemental report was not fundamental to Mr. Stork's defense or an important development in the course of his prosecution. The report was readily impeachable on its face—it was not prepared until nearly four months after the statement that it purported to recall, and that statement had been omitted from the report the officer wrote in its immediate aftermath. Defense counsel made that point quite effectively on cross examination, and there is no reason to believe he may have been ineffective for pursuing that basis for impeachment rather than providing the report to Mr. Stork in order to inquire as to any additional grounds for impeachment or contradiction. Further, Mr. Stork's argument that he was personally entitled to the report because he had a right to represent himself is misplaced, as he did not exercise that right and was not representing himself.

Finally, as discussed at more length below, Mr. Stork cannot show that he was prejudiced by not personally receiving the supplemental report earlier, even if that would have resulted in a more effective impeachment or contradiction of Officer Weigand's testimony. The charges and evidence in this case were primarily based on Mr. Stork's possession of the firearm and ammunition at the time of the traffic stop. Officer Weigand's testimony that Mr. Stork possessed the firearm earlier in the day was relevant, but was clearly secondary to the evidence that he possessed the firearm during his encounter with Officer McKinley, which was substantial.

Additionally, Officer Weigand's testimony at trial was quite effectively impeached on this point based on his incomplete recollection of the specific statement at trial and the long delay between the alleged statement and his preparation of the supplemental report. Therefore, the Court cannot conclude that even if Mr. Stork had received the supplemental report earlier, and even if he was able to produce the evidence and witnesses he claims, there is a reasonable probability that the result of the trial would have been different. Accordingly, this argument fails to establish that Mr. Stork received ineffective assistance of counsel.

**C.      Closing Arguments**

Mr. Stork next argues that his counsel was ineffective for failing to object to statements by the prosecutor during closing arguments that Mr. Stork views as mischaracterizing the evidence. The Seventh Circuit summarized the facts pertinent to this argument on Mr. Stork's direct appeal:

> Four days after his arrest, while still in state custody, Stork had agreed to speak with two police officers in a recorded session. During the conversation, which was played for the jury, Stork denied possessing the gun or throwing the magazine out the window, yet when asked why bullets had been in his lap, he said that "somebody" had tried to "throw it out the window." When the officers pressed him to identify this "somebody," Stork said it was "the person who was driving." During closing argument, the prosecutor recounted that Stork had admitted the bullets were in his lap but blamed Kindred for putting them there and throwing the magazine out the window.

*United States v. Stork*, 487 F. App'x 295, 297–98 (7th Cir. 2012) *cert. dismissed,* 133 S. Ct. 831 (2013). Mr. Stork argues that the government's characterization of his statement was improper since he did not expressly admit that the bullets were in his lap, and that his counsel's failure to object amounts to ineffective assistance of counsel.

This argument fails, however, because the prosecutor's statements were not improper in the first place. To the contrary, the Seventh Circuit has already rejected this argument on its merits:

> We agree with the government that the prosecutor's remarks were a fair characterization of the evidence heard at trial and thus were not improper. Although Stork correctly notes that he never expressly "admitted" to the presence of the bullets in his lap, prosecutors are allowed to argue reasonable inferences from the evidence heard by the jury. *See United States v. Klebig*, 600 F.3d 700, 718 (7th Cir. 2009); *United States v. Ward*, 211 F.3d 356, 365 (7th Cir. 2000). Stork's responses to the officers' questions, taken together, easily permit an inference that Stork conceded the presence of the bullets in his lap while implicating Kindred for throwing them there.

*Id.* Accordingly, Mr. Stork's counsel did not make any error at all in failing to object to these statements, much less one of constitutional magnitude, so this cannot constitute ineffective assistance of counsel.

## D.    Admission of the Audio Recording

Mr. Stork next argues that the audio recording containing these statements should have been excluded from evidence due to its lack of clarity, and that his counsel's failure to make such an objection constituted ineffective assistance of counsel. Again, however, Mr. Stork's argument fails because the admission of the audio recording was proper. "Tape recordings that are partially unintelligible are admissible unless the unintelligible portions are so substantial as to render the entire recording untrustworthy." *United States v. Larkins*, 83 F.3d 162, 167 (7th Cir. 1996). "Generally, the partial inaudibility of an audio recording is relevant to its weight, rather than its admissibility." *McMillian v. United States*, 08 C 5828, 2010 WL 3526500, at *5 (N.D. Ill. Sept. 1, 2010) (citing *United States v. Robinson,* 956 F.2d 1388, 1395 (7th Cir.1992)). Here, only very brief portions of the recording are difficult to understand. In addition, even those portions are not entirely unintelligible, and their context sheds further light on their substance. Accordingly, the Court would not have granted a motion to exclude the recording, so Mr. Stork's counsel was not ineffective for failing to file such a motion.

Mr. Stork was not prejudiced by the admission of the recording, either. Mr. Stork argues that the lack of clarity permitted the prosecutor to mischaracterize his statements to make them

more incriminating than they were. However, if the jury did not understand portions of the recording, then it is presumed to have disregarded the prosecutor's argument as to what Mr. Stork said in those portions. The jury was instructed that counsel's arguments are not evidence and should be disregarded unless what they said was supported by the evidence, and a jury is presumed to follow the Court's instructions. Further, as discussed above, the prosecutor's remarks were a fair characterization of the recording anyway, so the Court cannot conclude that Mr. Stork suffered any prejudice from the recording's admission.

**E.      The Interstate Commerce Element**

Mr. Stork also faults his counsel for failing to challenge the interstate commerce element of his offense. Mr. Stork argues that although the firearm in question was once transported in interstate commerce, it had lost its interstate character by the time of his offense. Accordingly, he appears to argue either that the government failed to prove the interstate commerce element of the offense, or that § 922(g)(1) is unconstitutional as beyond Congress' authority under the Commerce Clause. However, neither argument has merit.

The Seventh Circuit squarely addressed and rejected the first argument in *United States v. Rice*:

> Section 922(g)(1) provides in relevant part that a felon may not ". . . possess in or affecting commerce, any firearm or ammunition . . . ." The Supreme Court explained in *Scarborough v. United States*, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977), that the phrase "in commerce or affecting commerce" in the predecessor to § 922(g)(1) indicated a desire to impose "no more than a minimal nexus requirement" on the possession prong of the statute. *Id.* at 577, 97 S.Ct. 1963. Following *Scarborough*, we have held on numerous occasions that as long as a firearm moved across state lines at some point prior to the defendant's possession of it, the possession satisfies § 922(g)(1)'s "in or affecting commerce" requirement. *See, e.g.*, *United States v. Williams,* 410 F.3d 397, 400 (7th Cir.2005); *United States v. Bass*, 325 F.3d 847, 849 (7th Cir.2003); *United States. v. Bell*, 70 F.3d 495, 498 (7th Cir.1995); *cf. United States v. Skoczen*, 405 F.3d 537, 541 (7th Cir.2005) (recognizing that conspiring to receive or possess stolen goods that were in interstate commerce in violation of 18 U.S.C. § 659 requires proof that the goods were in interstate commerce). In this case, the firearms at

issue had all been manufactured outside of Illinois. In some instances years after the firearms first entered Illinois, Rice possessed them inside the state. This evidence was all the government needed to demonstrate that Rice possessed the firearms "in or affecting commerce."

520 F.3d 811, 815 (7th Cir. 2008). Here, Mr. Stork concedes that the firearm was manufactured outside of Indiana and that he possessed it inside of Indiana. That is all the government needed to establish to satisfy this element, so Mr. Stork's argument that the firearm lost its interstate character by the time of his offense is immaterial.

To the extent Mr. Stork is challenging the constitutionality of § 922(g)(1) itself, his argument is similarly unavailing. The Seventh Circuit has "held repeatedly that section 922(g)(1), because it requires proof that the defendant possessed a firearm 'in or affecting commerce,' represents a valid exercise of congressional authority under the Commerce Clause." *United States v. Williams*, 410 F.3d 397, 400 (7th Cir. 2005) (stating also that "so long as the firearm crossed state lines at any point prior to the defendant's possession of the gun, his possession is 'in or affecting commerce'"). Therefore, because Mr. Stork's arguments relative to the interstate commerce element are without merit, his counsel was not ineffective for failing to advance those arguments or for counseling Mr. Stork to waive them. *Ellis v. United States*, No. 3:12-cv-556, 2012 WL 4959491, at *3 (N.D. Ind. Oct. 16, 2012) (addressing and rejecting a similar argument as a basis for an ineffective assistance of counsel claim).

**F.    Admission of the Defendant's Inculpatory Statements**

Mr. Stork finally argues that his alleged admission to Officer Weigand was obtained in violation of *Miranda*, and that his counsel was ineffective for failing to move to exclude it. After being advised of his rights during his arrest and voluntarily speaking with Officer McKinley at the scene, Mr. Stork was transported to the St. Joseph County Jail for booking. Officer Weigand testified that while he was in the sally port with Mr. Stork, Mr. Stork stated that he had been

shooting off a gun earlier in the day. Mr. Stork now contends, for the first time, that he had invoked his right to remain silent following his questioning by Officer McKinley, and that the subsequent questioning by Officer Weigand without re-advising him of his rights violated *Miranda*.

Even assuming, however, that Mr. Stork actually invoked his right to remain silent before Officer Weigand's questioning and that his statement should have been excluded, Mr. Stork's claim fails under the second prong of *Strickland* because there is not a reasonable probability that the result of his trial would have been different if his attorney had moved to suppress the statement. This was a straightforward case with a substantial amount of evidence against Mr. Stork. While approaching the car, Officer McKinley heard a banging noise coming from the center console and then saw that the cup holder, which was being used as an ashtray, had been removed from the center console and was "barely hanging in there." [DE 67 p. 29]. The ash that had been in the tray fell out and formed a cloud, indicating it had just been removed, and Officer McKinley testified that he saw Mr. Stork's hands moving around close to the ashtray. Moments later, Officer McKinley heard the sound of metal hitting the ground outside of Mr. Stork's window. Mr. Stork's hand was hanging over the edge of his window, and Officer McKinley observed that the driver had not dropped or thrown anything. Officer McKinley then walked to the other side of the car and saw the magazine right outside Mr. Stork's door. When another officer arrived and removed Mr. Stork from the vehicle, Officer McKinley saw several bullets fall off of Mr. Stork's lap. Officers found two bullets on the ground where Mr. Stork was removed from the vehicle, and a third on the floor of the car between Mr. Stork's seat and the door. Finally, Officer McKinley searched the car and discovered a firearm in the area from which the cup holder had been removed. The three bullets found on the road and in the car

matched the one chambered in the firearm, and the magazine matched the firearm as well. Officer McKinley's testimony to these facts was consistent with the video recording and photographic evidence of the incident.

Given the substantial weight of this evidence, the Court cannot conclude that any error that counsel may have committed relevant to Mr. Stork's statement to Officer Weigand was prejudicial to Mr. Stork's defense. "In weighing the effect of counsel's errors, the court must consider the totality of the evidence. A verdict or conclusion that is overwhelmingly supported by the record is less likely to have been affected by errors than one that is only weakly supported by the record." *Eckstein*, 460 F.3d at 848 (internal alterations omitted) (quoting *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2001)). The verdict here was strongly supported by the record, and is therefore quite unlikely to have been influenced by any error relative to the statement in question.

That conclusion is further reinforced by the limited value of the statement and by defense counsel's impeachment of Officer Weigand. During his brief testimony, Officer Weigand could not remember exactly what Mr. Stork had said or what he had written in the supplemental report. In fact, part of his testimony actually contradicted the supplemental report, and he had to correct himself after refreshing his recollection with the report at the direction of the prosecutor. Further, defense counsel effectively impeached Officer Weigand by eliciting testimony that Officer Weigand omitted Mr. Stork's alleged statement from the report he completed immediately after the incident, and did not complete the supplemental report until nearly four months later, after he met with the prosecutor. As the Seventh Circuit has noted, "It is important to recall . . . that it is not enough to criticize counsel for failing to take particular steps. Instead, one must also address what action counsel did take, and then evaluate [his] performance as a whole." *Eckstein*, 460

F.3d at 849. Defense counsel's impeachment of Officer Weigand thus mitigated the effect of any error he may have made in not moving to exclude the statement. Finally, the prosecutor made little effort to rehabilitate Officer Weigand on this subject, and did not even mention Mr. Stork's alleged statement in his closing argument.

It is thus unlikely that this evidence had any meaningful effect on the jury's evaluation of the evidence. When considering that minimal value of this statement against the substantial weight of the other evidence against Mr. Stork, the Court cannot conclude that there is a reasonable probability that the result of Mr. Stork's trial would have been different if his attorney had moved to suppress the statement. Therefore, this argument cannot support an ineffective assistance of counsel claim.

## G. Conclusion

As to each of Mr. Stork's arguments, he has either failed to show that his counsel's performance was deficient or that any alleged deficiency prejudiced his defense. Mr. Stork has therefore failed to demonstrate that he did not have the effective assistance of counsel required by the Sixth Amendment. Without showing any violation of his constitutional rights, Mr. Stork does not have any basis for vacating his conviction or sentence under § 2255, so his motion must be denied.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and the Rule permits the Court to hear further argument on whether a certificate of appealability should issue. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c); Rule 11, Rules Governing Section 2255 Proceedings for the United States

District Courts. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (quotation marks omitted) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see Young v. United States*, 523 F.3d 717 (7th Cir. 2008). A defendant is not required to show that he will ultimately succeed on appeal. *Miller-El v. Cockrell,* 537 U.S. 322, 342 (2003) (stating that the question is the "debatability of the underlying constitutional claim, not the resolution of that debate").

Additional argument is not necessary here because nothing before the Court suggests that jurists of reason could debate the correctness of the Court's rulings herein, nor could there be a debate about whether the issues presented deserve further proceedings. As a result, the Court declines to issue the Defendant a certificate of appealability.

The Court advises Mr. Stork that pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, when the district judge denies a certificate of appealability, the applicant may request a circuit judge to issue the certificate. The Court further advises Mr. Stork that Rule 4(a) of the Federal Rules of Appellate Procedure governs the time to appeal an order entered under the rules governing § 2255 proceedings. *See* Rule 11(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Under Rule 4(a), when the United States is a party in a civil case, any notice of appeal may be filed by any party within 60 days after the judgment or order appealed from is entered. Fed. R. App. P. 4(a); *Guyton v. United States*, 453 F.3d 425, 427 (7th Cir. 2006) (stating that "the time to contest the erroneous denial of [the defendant's] first § 2255 motion was within 60 days of the decision").

## V.  CONCLUSION

For the independent reasons set forth above, the Court ADOPTS the holding suggested by the magistrate judge's report and recommendation. Accordingly, the Court DENIES Mr. Stork's § 2255 petition and DENIES the issuance of a certificate of appealability.

SO ORDERED.

ENTERED:  May 1, 2014

       /s/ JON E. DEGUILIO
Judge
United States District Court